## BAKERY AND CONFECTIONERY WORKERS' INTERNATIONAL UNION LOCAL NO. 492, v. NATIONAL BISCUIT CO.

### Civ. A. No. 8162.

District Court, E. D. Pennsylvania.
June 29, 1948.

Edward Davis, of Philadelphia, Pa., for plaintiff.

Charles J. Biddle, Lewis H. Van Dusen, Jr., and Drinker Biddle & Reath, all of Philadelphia, Pa., for defendant.

McGRANERY, District Judge.

This is a suit under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185, which provides for suits in the District Courts for violations of contracts between an employer and a labor organization representing employees in an industry affecting interstate commerce. Plaintiff is seeking the rehiring of three employees, damages for their loss of wages, and an injunction against the operation of a company pension and compulsory retirement plan, affecting two groups of employees. The pleadings disclose substantial agreement on the facts and the controlling legal issue they raise is a narrow one: whether the terms of the collective bargaining agreements in operation between plaintiff and defendant preclude the operation of the pension plan. Plaintiff claims that Article II, Section 1, of these agreements, prevents the company from retiring the three employees against their will. Defendant argues that it does not. Accordingly, it has filed a motion for judgment on the pleadings, which include, inter alia, the bargaining agreements and various affidavits setting forth the position of the union and the company as to the pension plan.

Briefly, the uncontroverted and material facts are these. The union and the company have been in a continuous contractual relationship prior to this dispute for many years—since 1939 for the Philadelphia bakeries, since 1943 for the York plant. On May 1, 1946, the company installed a pension plan under which its employees are required to retire at the age of sixty-five, at which time they receive a pension. The union wrote to the company objecting to the installation of the compulsory retirement feature of the plan shortly before May 1, 1946. In August and September, 1946, negotiations between the company and various locals of plaintiff union took place, preliminary to an agreement upon a new annual collective bargaining contract. One of the bargaining demands presented by the union was that no employee may be compelled to retire on pension without his consent. The company took the position that installation of the plan was an inherent management right and not to be bargained about. The union disagreed. Nevertheless, in October, a new collective bargaining contract was entered into, not referring to the pension plan but containing the seniority clause which plaintiff relies upon in the instant case. That clause provided:

"Rules of seniority shall prevail with respect to lay off and rehiring of employees and disputes concerning seniority rights shall be settled by the Company and the Union. In the event work becomes slack, employees shall be laid off in the inverse order in which they were hired; that is, employees last hired shall be the first laid off. When rehiring takes place, those employees laid off last shall be rehired first and no new employees shall be hired until all the employees on the list of former employees have been rehired."

In August, 1947, new collective bargaining agreements were entered into. The formal demands submitted by the plaintiff to defendant company prior to contract negotiations contained the following: "Compulsory retirement shall be discontinued by the company even if it means the elimination of the present Nabisco Pension Plan." The executed contract did not mention the plan, nor did it alter the seniority clause relied upon by plaintiff in the instant case. A letter from the union to the company in September, 1947, reiterated its opposition to the pension plan. The three employees involved in this suit were retired in accordance with the plan.

The facts make clear that the union and the company have disputed the issue of whether pension plans are properly a subject of collective bargaining. A recent decision of the National Labor Relations Board, holding that they are, will probably resolve any such conflict in the

future. See Inland Steel Company 1 Labor Law Svc. (CCH) par. 6454. Under it, refusal to bargain over retirement plans is an unfair labor practice. Plaintiff union, therefore, will have a remedy should the company adhere to its original position when negotiations again occur. However, for three reasons I feel that the instant suit must fail. First, plaintiff is urging, in effect, that the company agreed to an interpretation clearly contrary to the position it adhered to in preliminary negotiations in two successive years. It does not seem reasonable that the company bargained the pension plan out of existence when it felt in two successive years that this was not a proper subject for collective bargaining at all. Second, in the disputed situation described above, it seems likely that some explicit reference to the plan in the new contract would be necessary before a standard seniority clause, probably carried over from previous contracts, could control. Third, and most important, the wording of the seniority clause weakens plaintiff's position. The clause provides that rules of seniority shall prevail with respect to lay off and rehiring of employees. This phraseology would not ordinarily encompass this kind of permanent separation from the employ of the company. Thus, in Metals Disintegrating Co., 4 Labor Arb.R. 601, where a union contended that a pension plan violated a similar seniority clause, the Arbitrator said:

"In essence, the company policy * * * amounts to a rule of general application relating to the span of normal efficiency of the working force. The matters herein involved are not layoffs within the scope * * * of the seniority clause. There is no reduction in force due to business conditions and no preference of a junior employee over a senior employee. There is no layoff involved within the ordinary acceptance of that term in industrial relations."

Cf. Fishgold v. Sullivan Drydock & Repair Corporation, 328 U.S. 275, 66 S.Ct. 1105, 167 A.L.R. 110, 90 L.Ed. 1230; American Salt Corporation, 9 Labor Arb.R. 124. For these reasons, therefore, I feel that plaintiff is trying to read into the agreement what it failed to accomplish by collective bargaining. Accordingly, defendant's motion for judgment on the pleadings will be granted under Rule 12(c), as amended, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and an order will be entered in accordance with this opinion.